```
          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF OHIO
                WESTERN DIVISION
```

```
ROBERT N. JAMES,              :
                              :    NO. 1:09-CV-00839
        Plaintiff,            :
                              :
    v.                        :    OPINION & ORDER
                              :
OHIO DNR OFFICER JAMES        :
TUNNELL, et al.,              :
                              :
        Defendants.           :
```

This matter is before the Court on Defendant Officer James R. Tunnell's Motion to Dismiss (doc. 9) and Defendant Deputy Daron Rhoads' Motion for Partial Judgment on the Pleadings (doc. 11), and the respective memoranda in response and reply (docs. 18, 19, 20, 22). For the following reasons, the Court DENIES Defendant Tunnell's Motion in part and GRANTS it in part (doc. 9) and GRANTS Defendant Rhoads' Motion in its entirety (doc. 11).

### I. Background

At approximately 6:00 p.m. on November 13, 2007, Defendant Rhoads stopped the truck that Plaintiff was driving and found two unsecured firearms in the cab (doc. 1). Rhoads detained Plaintiff for improper handling of a firearm in violation of Ohio law, handcuffed Plaintiff, and put Plaintiff in his cruiser (Id.). Defendant Tunnell then arrived at the traffic stop and Defendants conducted a roadside investigation regarding Plaintiff's possible involvement in illegal hunting activities, during which time Plaintiff remained cuffed in Rhoads' cruiser (Id.). Tunnell

secured a search warrant, which authorized a search of Plaintiff's home for evidence relating to hunting violations, and Defendants searched Plaintiff's home for approximately five hours in the early morning hours of November 14, 2007 (Id.).

During their time in Plaintiff's home, Defendants discovered some adult sexual devices; Defendants then removed those devices from their locale, turned them on to their vibrate setting, and left them out on display (Id.). In addition, Defendants discovered some pornographic tapes, which they removed and displayed on Plaintiff's bed (Id.). Further, Defendants found and moved both a weapon and some ammunition from a secure location in the home to unsecure locations and lined the ammunition up in different locations throughout the house (Id.). Finally, Defendants also decorated a mounted deer head in the home with a hat, Christmas lights and goggles (Id.).

At approximately 2:15 a.m., early November 14, 2007, Plaintiff was taken to jail, where his handcuffs were removed (Id.). He had been handcuffed at that point for approximately eight hours and suffered both pain and injury; his requests for the cuffs to be loosened throughout the night were denied (Id.). Plaintiff was convicted of a misdemeanor gun offense and was charged with a misdemeanor deer-tagging offense (Id.).

Plaintiff filed a complaint in this matter alleging (1) unreasonable execution of the search warrant in violation of the

2

Fourth and Fourteenth Amendments to the United States Constitution; (2) the use of excessive force in violation of the same; (3) the deprivation of his rights secured by the Constitution, in violation of 42 U.S.C. §1983; and (4)[1] wrongful intrusion into his private activities in such a way that outrages, caused shame and/or would humiliate a person of ordinary sensibilities, an Ohio privacy tort (Id.).

**II. The Applicable Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) requires the Court to determine whether the Court has subject matter jurisdiction over the case. The state of Ohio and its employees are generally immune from suit. U.S. Const. Amend. XI; Ohio Rev. Code 9.86. Under certain circumstances, this immunity does fall away. See Lawson v. Shelby County, 211 F.3d 331, 334-35 (6th Cir. 2000)(discussing exceptions to Eleventh Amendment immunity); Ohio Rev. Code §9.86 (providing exceptions to immunity of state officers and employees); Ohio Rev. Code §2743.02 (waiving state immunity under certain conditions).

---

[1] The Court notes that the complaint presents <u>four</u> claims for relief and appears to be erroneously numbered "first," "second," "third" and "sixth." In this Order, the "sixth" claim will be referred to as the fourth claim. In addition, the Court notes that 42 U.S.C. §1983 does not itself confer substantive rights. See Graham v. Connor, 490 U.S. 386 (1989); 42 U.S.C. §1983. Therefore, the Court construes Plaintiff's Section 1983 claim (Plaintiff's third claim) as being a reference to the vehicle through which Plaintiff alleges the excessive force and unreasonable search claims (his first and second claims).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere

between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would

5

>   clearly dominate the case, it seems fair to assume that
>   those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

Defendant Deputy Daron Rhoads has styled his motion as one for partial judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) (doc. 11). The Court employs the same standards to evaluate a motion made pursuant to Rule 12(c) as those used to evaluate a motion made pursuant to Rule 12(b)(6). Lindsay v. Yates, 498 F.3d 434, 438 (6th Cir. 2007).

**III. Officer Tunnell's Motion**

**A. The Parties' Arguments**

First, Defendant Tunnell argues that the Ohio privacy tort alleged against him must be dismissed because the Court lacks subject matter jurisdiction over the claim (doc. 9). Specifically, Tunnell contends that Ohio law requires that a state court of claims determine first whether Tunnell's actions were outside the scope of employment or done with malicious purpose, in bad faith or in a wanton or reckless matter before this Court may entertain the claim (Id., citing Ohio Rev. Code 9.86; State ex rel. Sanquily v. Lucas County Common Pleas Court, 573 N.E.2d 606 (Ohio 1991); Haynes v. Marshall, 887 F.2d 700 (6th Cir. 1989)). Because no such determination has been made, Tunnell moves the Court to dismiss Plaintiff's Ohio-law claim for lack of jurisdiction (Id.).

6

Plaintiff agrees with Tunnell's position regarding this claim (doc. 18).

Second, Tunnell contends that Plaintiff has failed to allege facts supporting his claim that the search was unreasonably executed (Id.). Specifically, Tunnell characterizes Plaintiff's complaint as being merely that the officers who searched his house did not return to their original places some items of his personal property (Id.). Tunnell notes that Plaintiff does not explain in his complaint how he was offended by the placement of these items or that the property was destroyed or damaged (Id.). Tunnell further notes that Plaintiff is speculating about the motives of the officers when he alleges that the officers placed the pornographic tapes and the personal sexual devices on display so that Plaintiff would know that the officers had seen them, and Tunnell contends that, whatever the officers' motives may have been, the "relevant question is whether their actions in moving the personal belongings of the plaintiff were objectively justified given the circumstances" (Id.). Tunnell further contends that "execution of a warrant may be potentially embarrassing to anyone depending on what items might be disturbed in the process [but] it does not rise to a [constitutional] violation..." (Id., citing L.A. County, California v. Rettele, 550 U.S. 609, 615-16 (U.S. 2007)). Tunnell points the Court to a case decided in the Northern District of Georgia for guidance on deciding "whether an officer's handling

7

of a piece of property during a search was so unreasonable that it made the search unconstitutional" (Id., citing United States v. Kearns, 2006 Dist. LEXIS 66389 (N.D. Ga., Sept. 15, 2006)).

In response, Plaintiff argues that he has stated a claim for unreasonable execution of the warrant and directs the Court to cases decided by the Eighth and Ninth Circuits, respectively, for the proposition that the manner in which a warrant is executed can render the search unreasonable (doc. 18, citing Hummel-Jones v. Strope, 25 F.3d 647 (8th Cir. 1994); Franklin v. Foxworthy, 31 F.3d 873 (9th Cir. 1994)).

Third, Tunnell argues that he is entitled to a dismissal of Plaintiff's excessive force claim because none of the facts alleged by Plaintiff support an inference that Tunnell was involved in the use of force, excessive or not, against Plaintiff (doc. 9). Instead, all facts regarding the use of force relate to Defendant Rhoads, and Tunnell is only connected to the allegations regarding the execution of the warrant (Id.). Plaintiff agrees with Tunnell's position regarding this claim (doc. 18) .

**B. Discussion**

    **1. Jurisdiction over the state claim**

With respect to the Ohio privacy tort alleged, the Court lacks subject matter jurisdiction to hear that claim. In Ohio, state employees are generally immune from suit. Ohio Revised Code 9.86 provides that

8

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

This action does not arise out of the operation of a motor vehicle, and clearly the state is not the plaintiff. Plaintiff's complaint does not specifically allege that Tunnell acted with malicious purpose, in bad faith or in a wanton or reckless manner. However, even if the Court liberally construes the complaint to so allege, Ohio Revised Code §2743.02(F) requires dismissal of this claim. That section of Ohio's code reads in relevant part

> A civil action against an officer or employee...that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner <u>shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code</u>....(emphasis added).

The Sixth Circuit has interpreted these sections of the Ohio code to mean that "state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." <u>Haynes v. Marshall</u>, 887 F.2d at 704. No evidence has been presented to the Court that an Ohio court of claims has determined that Defendant Tunnell is not entitled to immunity, and the Court finds nothing in the complaint or the

9

motions and responsive documents before the Court that would otherwise suggest that Defendant Tunnell is not entitled to immunity on the state privacy tort alleged.  In addition, this issue is conceded by Plaintiff.  Consequently, Plaintiff's Ohio privacy tort claim is dismissed against Defendant Tunnell.  See Haynes, 887 F.2d 700.

### 2. The unreasonableness of the search

Regarding Plaintiff's claims that the search was unreasonably executed, Defendant Tunnell's attempts to present Plaintiff's allegations as merely that Tunnell "did not return personal property...back in the same place in which they [sic] were found" are not well-taken by this Court.  Tunnell repeatedly attempts to portray this case as though it were simply a matter of officers "[m]oving objects and going through personal property," asserting, for example, that "[l]eaving personal belongings 'out' or on Plaintiff's bed is certainly not unreasonable..." (doc. 9). By minimizing Plaintiff's complaint this way, Tunnell blatantly ignores the other facts present therein.  Officers did not simply move items from their storage places.  This was not a simple matter of reasonably "going through personal property" looking for evidence related to hunting.  Taking Plaintiff's factual allegations–all of them–as true, the execution of this warrant went far beyond that.  Objects weren't simply moved: they were lined up in various areas of the house; they were turned on to vibrate; they

were used to decorate a mounted deer head.  These actions are not reasonably related to the execution of the warrant, and the Court cannot see how Tunnell can seriously contend that such actions were "objectively justified."

The cases to which Tunnell cites are unavailing.  First, Tunnell points the Court to <u>Johnson v. Weaver</u>, suggesting that <u>Johnson</u> is similar to the instant case (doc. 9).  While <u>Johnson</u> also was a section 1983 action involving allegations that a search for evidence relating to illegal hunting activity, that is where the similarities end.  <u>Johnson</u>, 248 Fed. Appx. at 699-700.  Johnson argued that the officers exceeded the scope of the warrant when they continued to search-in the medicine cabinet and bedroom drawers-after they had already found the guns and ammunition, which were "immediately accessible."  <u>Id</u>. at 699.  The court disagreed, finding that the search was reasonable because more shells could have been hidden, and, being small and easy to hide, they could have been hidden in places like medicine cabinets and drawers.  <u>Id</u>. at 700.  Very much unlike the plaintiff in <u>Johnson</u>, Plaintiff here does not claim that the search should not have included, for example, the drawers where the adult sexual devices and videotapes were found.  Instead, it is what the officers did with materials unrelated to the purpose of their search that Plaintiff takes issue with, a situation not remotely present in <u>Johnson</u>.

Similarly, Tunnell cites <u>L.A. County</u> for the proposition

that embarrassment caused by a search does not rise to the level of a constitutional violation (doc. 9). Unfortunately, this is a mischaracterization of L.A. County. 550 U.S. 609. The issue present in L.A. County was whether the police were unreasonable when, in search of an armed suspect, they entered a residence and woke a couple who were in bed naked, ordered the couple out of the bed and held them at gunpoint for one to two minutes before they were allowed to put clothes on and wait in the living room for the officers to complete their search, all of which took less than fifteen minutes. 550 U.S. at 611. Recognizing that officers may take reasonable action to secure the premises and ensure their own safety and the efficacy of the search when executing a warrant, the court found that it was reasonable for the officers to ask the couple to remain standing naked for those two minutes to ensure that no weapons were, for example, hidden under the pillows or the bedding. Id. at 614. Noting that "[o]fficers executing search warrants on occasion enter a house when residents are engaged in private activity[,] and the resulting frustration, embarrassment, and humiliation may be real," the court held that "[w]hen officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated." Id. at 615-16. Contrary to Tunnell's implication, this passage, when read in context as it should be, stands for the idea that embarrassment suffered as a result of being caught

12

engaged in private activity will be analyzed against whether the officers were reasonably trying to protect themselves.  Such a situation is not present here.  Plaintiff was not caught engaged in any kind of activity-on the contrary, he was cuffed or at the station during the search, which took over five hours.  And the officers engaged in the search of Plaintiff's house certainly cannot in any legitimate way claim that they needed to, for example, turn Plaintiff's sexual devices to their vibrate setting or cloak the deer head in Christmas lights for their personal safety or the efficacy of the search.  Tunnell's use of L.A. County to support his position is not persuasive.

Finally, Defendant Tunnell directs the Court to a case from Georgia for support for the proposition that unprofessional actions do not rise to the level of constitutional violations (doc. 9).  In Kearns, which was a criminal case and not a civil action, the court addressed whether the officer's actions in putting on the defendant's faux mink coat and posing for a picture with a bottle of cognac and a bag of marijuana were so unreasonable as to warrant the application of the exclusionary rule. United States v. Kearns, 2006 U.S. Dist. LEXIS 66389, *17.  The court explicitly approached and analyzed the matter as whether application of the exclusionary rule should expand "to deter conduct regarding the treatment of evidence seized" and ultimately decided that "the deterrence of distasteful and inappropriate conduct by law enforcement officers

13

is not an interest the exclusionary rule is designed to address." Id. at *17-18.  Clearly, in the instant matter the exclusionary rule is not implicated, and the Court is simply not persuaded by this criminal case from Georgia.

A search, even when supported by probable cause, may nevertheless be unreasonable because of the manner in which it is carried out.  Tennessee v. Garner, 471 U.S. 1, 7-8 (1985). Officers are certainly under no duty to put everything back where they found it in the course of their search, but a warrant does not give officers license to spend hours frolicking through a suspect's home, hanging Christmas lights, dressing up mounted heads, lining up ammunition and playing with personal sexual devices.  In short, Plaintiff has presented factual allegations sufficient to withstand a motion to dismiss.  See Courie, 577 F.3d at 629-30.  The Court therefore denies Defendant Tunnell's motion with respect to Plaintiff's claim for violations of the Fourth and Fourteenth Amendment as the same relates to execution of the search warrant.

### 3. The excessive force claim

None of the facts alleged by Plaintiff regarding the use of force relates to Tunnell, and Plaintiff concedes that dismissal of his excessive force claim against Tunnell is appropriate.  The Court finds that Plaintiff has failed to allege facts supporting a plausible inference that Tunnell was involved in the use of excessive force against Plaintiff.  See Iqbal, 129 S.Ct. at 1949.

Consequently, the Court grants Defendant Tunnell's motion to dismiss with respect to Plaintiff's excessive force claim.

**IV. Deputy Rhoads' Motion**

Defendant Rhoads asserts that he is entitled to judgment on the pleadings dismissing Plaintiff's first, third (as it pertains to the unreasonable execution of the search warrant), and fourth claims (doc. 11). Rhoads contends that Plaintiff has alleged no facts supporting the proposition that Rhoads was involved in the handling of any of the items mentioned in the complaint; Plaintiff has put forth no facts supporting his contention that the officers' intent was to mock Plaintiff; and, even if Rhoads had been involved in the moving of the items, and even if that had been done with the intent to mock, Plaintiff has failed to state a valid claim against Rhoads because, Rhoads argues, leaving personal sexual items and ammunition out on display and decorating a deer's head do not rise to the level of a constitutional violation (Id.). In addition, Rhoads notes that Ohio's invasion of privacy tort when based on the execution of a search warrant is not actionable, and, to the extent Plaintiff's Ohio law privacy violations are based on the handcuffing at the traffic stop, they are barred by the applicable statute of limitations (Id., citing Dye v. Columbus Retail Merchants Delivery, Inc., No. 75 AP-252 (Franklin 10th App. Dist. Nov. 4, 1975); Love v. City of Port Clinton, 524 N.E.2d 166 (Ohio, 1988)).

15

Consequently, Rhoads contends that Plaintiff's Ohio-law claims against him should be dismissed (Id.).

Plaintiff agrees with Rhoads' position and notes that Rhoads was sued only for the use of excessive force in violation of 42 U.S.C. §1983 because Plaintiff has no information that Rhoads participated in the search of Plaintiff's home (doc. 19).

Under these circumstances, dismissal of claims one, three (but only to the extent it relates to the execution of the warrant), and four against Defendant Rhoads is proper.

**V.   Conclusion**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant Tunnell's Motion to Dismiss (doc. 9) and GRANTS Defendant Rhoads' Motion for Partial Judgment on the Pleadings (doc. 11).


SO ORDERED.

Dated: June 15, 2010          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge